## APPEAL OF CORNELIUS LUMBER CO.

Docket No. 4273. Decided October 27, 1926.

1. During 1920 taxpayer made advances totaling $98,140.27 against lumber as cut and which was to be on its order. The contract between the parties provided that upon the receipt of bills of lading the taxpayer should remit to the Plantation Co. the invoice price of the lumber after deducting, among other items, the amount of $30 or $35 a thousand, depending upon the grade of lumber, to cover advances of this amount theretofore made. In November, 1920, the Plantation Co. became insolvent and ceased operations, and taxpayer discovered that the company was short 393,000 feet of lumber which it had reported as being ready for shipment, and against which taxpayer had made advances. In November, 1920, taxpayer took possession under

the contract of all lumber in the yards of the value of $50,062.08. *Held*, that taxpayer sustained a loss in 1920 of $48,078.19.

2. Deduction for a worthless debt allowed.

3. The Commissioner's determination of the deduction for 1920 as reasonable compensation for officers approved.

*George D. Wick, Esq.*, and *Atwood Burt, C. P. A.*, for the petitioner.

*George G. Witter, Esq.*, for the Commissioner.

The Commissioner determined a deficiency for the calendar year 1920 of $12,045.28. It is claimed by the taxpayer that (1) in 1920 it made certain advances, amounting to $98,140.27, against lumber to be shipped on its order, under a contract providing that in the event the Plantation Co. failed to perform its part of the contract the taxpayer should take possession of all lumber on hand; that this contract was breached by the Plantation Co., which became insolvent in 1920; that in November of that year taxpayer took possession of the lumber on hand and immediately inventoried it at $50,062.08, as a result of which it was entitled to a deduction of $48,078.19, as loss sustained; (2) it is entitled to a deduction of $2,006.71 for a worthless debt; and (3) $41,400 should have been allowed as a deduction for officers' compensation, instead of $24,050, as allowed by the Commissioner.

### FINDINGS OF FACT.

The taxpayer is a Missouri corporation organized in June, 1919, and engaged in the sale of lumber at wholesale, with principal office at St. Louis. It kept its books and rendered its returns upon the accrual basis.

On February 3, 1920, the taxpayer entered into a contract with certain individuals doing business under the name of the Sycamore Plantation Co., which contract provided—

In consideration of your causing cash to be advanced on manufactured lumber as hereinafter set forth, we, John E. Osborn and John T. Meek, doing business as the Sycamore Plantation Company, at Osmeek, La., hereby appoint you, our exclusive selling agent for the entire cut of our one band and one circular sawmills, and the Flowns circular contract sawmill located in ―――― parishes, Louisiana, and which said mills we estimate will produce approximately ten million feet of red and sap gum, red and white oak, white ash, cypress, etc., during the year nineteen twenty, and which we guarantee will produce at least three million feet during said period.

  *   *   *   *   *   *   *

In consideration of our appointing you our exclusive sales agent you agree to make us an advance of $35.00 per thousand on all #2 Common and Better lumber manufactured at above three mills, for the first ninety (90) days of this contract after which time the said advance shall be at the rate

of $30.00 per thousand feet, and if necessary for us to make any advances on #3 Common with said contract mill, you are to make us the same advances as we make said mill. In consideration of, and as security for these advances to be made every two weeks after the lumber has been put in pile (but no total cash advance at any time to exceed one hundred thousand dollars ($100,000.00), we agree to furnish you notes and mortgages in accordance with the law of the State of Louisiana, guarantying the lumber at the time of delivery to you free of all liens, taxes, labor bills of every description, and we to furnish certificates from the Parish Clerk setting forth that there are no judgments, suits or claims, the foregoing is to be done and evidence thereof furnished bank in Louisiana which you shall authorize to pay us a sum equal to such notes and mortgages from time to time when presented by us to such bank.

We will furnish lease on the ground upon which said lumber is piled to cover a period of time until all lumber manufactured under this contract is shipped, and without cost to you.

 *   *    *    *    *    *    *

We agree to pay you a selling commission of twelve per cent (12%) on the invoice value, which shall be due and payable when cars are shipped, which shall cover and include cash discount.

At the time of shipment this will be your authority to deduct the $35.00 or $30.00 per thousand which may have been advanced as provided in section seven, same to be used in liquidating the notes for the cash advanced on this lumber, and to retain in addition to this advance a sum equal to $10.00 per thousand as a Sinking-Fund with which to retire our advance and indebtedness to you, the balance of the face of the invoice to be remitted upon receipt of bills of lading, after deducting the aforesaid $45.00 or $40.00 per thousand feet advance and Sinking-Fund, interest, commission, estimated freight charges, etc. The final settlement on freight charges to be made monthly as actual freight charges are ascertained.

 *   *    *    *    *    *    *

If, for any reason, we do not load and ship the lumber in accordance with your shipping instructions and the terms and agreements herein, all unpaid cash advances and other indebtedness will immediately become due and payable, and this will be your authority to inspect, measure, haul, load and ship all the lumber under this contract at our expense, and to retain the full value of each shipment until the unpaid advances and other claims under this contract have been liquidated. You to have the full use of all the facilities of our yard to ship the stock referred to, and without cost to you.

 *   *    *    *    *    *    *

The Plantation Co. rendered taxpayer weekly statements of the amount and kind of lumber stacked on the land leased to it and ready for shipment. The Plantation Co. leased to the taxpayer the land upon which such lumber was to be piled. From time to time taxpayer made advances to the Plantation Co. of $30 or $35 a thousand feet for lumber which the Plantation Co. had reported as being stacked and ready for shipment. As the taxpayer made advances from time to time against the lumber cut, the Plantation Co. executed its lien notes for the amounts advanced, together with chattel mortgages upon the lumber.

In October, 1920, taxpayer discovered that the Plantation Co. was short 393,000 feet of lumber, which it had reported as being stacked in the yard and on which taxpayer had made advances. On November 9, 1920, the taxpayer ascertained that the Plantation Co. was insolvent, was unable to meet its pay roll, and had a few days prior thereto ceased operations. The taxpayer immediately took possession of the lumber in the yard under the terms of the contract and chattel mortgages. Between November 9 and 15, 1920, taxpayer made a complete inventory of the lumber at the prevailing market prices and determined the value of all lumber taken over to be $50,062.08. It was subsequently sold at approximately that amount. At the time the lumber was taken over by the taxpayer, the net debit to the account of the Plantation Co., all of which represented advances during 1920, amounted to $98,140.27.

The taxpayer claimed that it was entitled to an inventory loss for 1920 in the amount of $48,078.19, the difference between the amount advanced and the value of the lumber taken over. The Commissioner denied this claim and held that the transaction between the Plantation Co. and the taxpayer gave rise to a debt which was neither ascertained to be worthless nor charged off within the year. The Plantation Co. was adjudicated a bankrupt in January, 1921, and its affairs closed.

In March, 1920, the American Harvester Co. purchased from the taxpayer certain lumber and gave in payment therefor its note for $4,338.27. During the year the note was reduced by payments to $2,086.71. In the latter part of 1920 the debtor became insolvent. Prior to the end of the year the taxpayer, through its manager, at the place where the debtors' offices were located, made every effort to collect the unpaid portion of the note, without success. It made a careful investigation and ascertained that the company was without assets. It concluded that the debt was worthless and charged it off within the year 1920. Subsequently, sometime during 1921, the taxpayer discovered four threshing machines belonging to the debtor and caused them to be attached and sold. Notes were given by the purchasers to the taxpayer for the machines and have never been paid.

During the first part of 1920, taxpayer's operations were profitable and resulted in large earnings during that period. In June or July, 1920, there was a marked decline in the price of lumber, with the result that taxpayer's operations during the last half of 1920 were not profitable.

Prior to March, 1920, the entire capital stock of the par value of $100,000 was owned 51 per cent by L. E. Cornelius, president, and 49 per cent by R. W. Siegel, vice president and treasurer. Thereafter, J. A. Johnson acquired 150 shares.

On January 5, 1920, at a meeting of the directors, the following resolutions were adopted:

On motion, duly seconded, it was ordered that the officers of this Company be paid the following salaries in equal semi-monthly installments, to wit: The President $800.00 per month, the Vice-President and Treasurer $400.00 per month, the Secretary $250.00 per month, and the Assistant Secretary $175.00 per month.

\*       \*       \*       \*       \*       \*       \*

Mr. R. W. Siegel offered the following resolution:

Be it resolved that a stock dividend of 20% on the capital stock of this Company be and the same is hereby declared, and that the same be charged to the surplus account of this Company for the year 1919 as shown by the statements heretofore submitted to this meeting, and credited to capital account.

\*       \*       \*       \*       \*       \*       \*

Resolved, further, that a cash dividend be and the same is hereby declared, of any amount recovering in said surplus account, namely $409.66, being 81.93 cents per share, and distributed in the same proportion.

On motion said resolution was adopted.

At a special meeting of the directors held March 15, 1920, the following resolutions were adopted:

Mr. J. A. Johnson, a stockholder of this Company, was nominated as a Director to fill the vacancy caused by the resignation of Mrs. Vera L. Cornelius, and a ballot being had he was declared duly elected by the unanimous vote of the members present.

Mr. Vern N. Cornelius offered the following preamble and resolution:

Whereas, by reason of sundry contracts for the sale of the product of this Company made in the year 1919, for delivery during the year 1920, this company expects to transact a greatly increased volume of business during the year 1920, and

Whereas, said increase is largely due to the activities and efficiency of the President, Mr. L. E. Cornelius, and the Vice-President and Treasurer, Mr. R. W. Siegel, in building up the trade and good will of this company, Now, Therefore,

Resolved, that the sum of thirty thousand ($30,000. 00) dollars to be paid out of the net earnings of this company for the year 1920, be and the same is hereby appropriated as special compensation for the services of the President and of the Vice-President and Treasurer.

Resolved, further, that the amount so appropriated be credited to L. E. Cornelius and R. W. Siegel, in twelve equal monthly installments, as follows:

To L. E. Cornelius, $1,275.00 per month_____ $15, 300. 00
To R. W. Siegel, $1,225.00 per month_____ 14, 700. 00

and paid to them, respectively, or to their heirs, at the end of the year 1920.

On motion, duly seconded, the foregoing resolution was adopted by unanimous vote of those present.

On motion, it was ordered that the number of Vice-Presidents of this company be increased from one to two, and Mr. J. A. Johnson was elected Vice-President to fill the position so created. On motion it was further ordered that the salary of J. A. Johnson as such Vice-President shall be $500.00 per month, to relate to and begin on the 1st day of January, 1920.

On April 26, 1920, a special meeting of the directors was held, the minutes of which were as follows:

A special meeting of the Board of Directors of the CORNELIUS LUMBER COMPANY was held at the Office of the Company, * * * on this the 26th day of April, 1920, at 2:00 P. M.

Those present were:

L. E. Cornelius, President, Presiding,
R. W. Siegel, Vice-President & Treasurer,
J. Albert Johnson, Vice-President,
Vern N. Cornelius, Secretary, and
Roy R. Siegel,

when the following proceedings were had:

On motion duly made and seconded it was ordered that the following salary changes be made:

*Effective as of January 1st:*

| | |
|---|---|
| L. E. Cornelius | $1300.00 |
| R. W. Siegel | 900.00 |
| J. A. Johnson | 1000.00 |

*Effective as of April 15th:*

| | |
|---|---|
| V. N. Cornelius | $300.00 |
| R. W. Bira | 300.00 |
| G. E. Goodsell | 200.00 |
| W. L. Kurz | 250.00 |

The minutes of a meeting of the directors held on May 7, 1920, were as follows:

Pursuant to notice duly given, the Directors of the above Company met at the above time and place.

There were present:

Messrs. L. E. Cornelius,
V. N. Cornelius,
R. W. Siegel,
J. A. Johnson, and
R. R. Siegel,

being all of the directors of the Company.

The President, L. E. Cornelius, presided, and Mr. V. N. Cornelius acted as secretary of the meeting.

The President stated that the present surplus of the Company was in excess of $75,000.00, and suggested that a stock dividend of 33⅓% be declared to the stockholders of the Company on this date, payable out of the surplus of the Company. Thereupon, upon motion duly made and seconded, and unanimously carried, it was resolved that a stock dividend of 33⅓% be, and it is hereby declared to the stockholders of the Company of record on this date, being a total distribution of 250 shares of the common stock of this Company to be divided among the stockholders in proportion to their holdings, and that the officers be instructed to make the proper entries on the books and to do all things necessary to complete the transaction.

Upon motion duly made and seconded and unanimously carried, it was resolved that on account of the extraordinary earnings of the Company during the past six months, and on account of the unusual services rendered by the officers of the Company, that a bonus of $3000.00 be voted as extra compensation to Messrs. L. E. Cornelius, J. Albert Johnson, and R. W. Siegel.

The total compensation of the three officers, Cornelius, Siegel and Johnson, authorized during the year amounted to $68,400. A portion of this amount was paid to them in cash and preferred stock and the balance was credited to their accounts upon the books as follows:

| | Cash paid. | Paid in preferred stock issued June 25, 1920. | Credited. | Total authorized. |
|---|---|---|---|---|
| L. E. Cornelius, president | $9,600 | $11,600 | $9,700 | $30,900 |
| R. W. Siegel, vice president | 4,800 | 11,600 | 9,100 | 25,500 |
| J. A. Johnson, vice president | 6,000 | 4,500 | 1,500 | 12,000 |
| | 20,400 | 27,700 | 20,300 | 68,400 |

At the end of the year 1920 each of the three officers, on account of the condition of the company resulting from a slump in the lumber market, voluntarily canceled $9,000 of the salaries paid or credited to them, leaving the officers' salaries paid or accrued for the year in the net amount of $41,400, which amount is now claimed as a deduction from gross income for 1920.

During the year 1919 the taxpayer had a net income of $16,624.06 and paid its three officers a total compensation of $12,350, as follows:

L. E. Cornelius, president _____ $6,950
R. W. Siegel, vice president _____ 4,350
V. N. Cornelius, secretary _____ 1,050

For 1921 the company paid officers salaries totaling $18,400, as follows:

L. E. Cornelius, president _____ $8,250
H. E. Cornelius, vice president _____ 2,225
V. E. Cornelius, vice president _____ 1,525
R. W. Siegel, vice president _____ 3,800
J. A. Johnson _____ 2,600

The return for 1921 showed a loss of $17,466.72.

In the audit of the return for 1920 the Commissioner determined that $24,050 was reasonable compensation for officers and allowed this amount as a deduction.

OPINION.

LITTLETON: We are of the opinion that the taxpayer is entitled to a deduction for 1920 of $48,078.19 as a loss sustained within the

year as a result of the advances made to the Sycamore Plantation Co. for lumber to be furnished by it. The taxpayer was not to be repaid the advances in money direct. Instead taxpayer was to receive lumber and, in making remittances to the Plantation Co., taxpayer, under the contract, deducted from the price at which the lumber was invoiced to it, among other sums, the amount of $30 or $35 a thousand feet, according to the grade of lumber. The contract between the parties provided that, in the event of failure of the Plantation Co. to fulfill its part of the contract, the taxpayer should take possession of all the lumber on hand and apply the same against the advances theretofore made. When the Plantation Co. became insolvent and ceased operations early in November, 1920, the taxpayer took possession of the lumber and found that it was of a value of $50,062.08. It therefore sustained a loss of $48,078.19, being the difference between the amount advanced against which the lumber was to be applied and the value of the lumber taken over.

The evidence convinces us that the debt of the American Harvester Co. was properly ascertained to be worthless and charged off within the year. The amount was therefore properly deducted from gross income.

The taxpayer claims that it should be allowed a deduction for 1920 of $41,400, the net amount of officers salaries paid or accrued within the year. The Commissioner contends that the amount arrived at by him represented reasonable compensation for the services rendered and that the amount authorized by the directors in excess of that amount represented a distribution of profits of the corporation. We have no evidence as to the character or extent of the services rendered by the taxpayer's officers. The several resolutions constitute the only evidence relating to this issue. On January 5, the president's salary was fixed at $800 a month and that of the vice president and treasurer at $400 a month. This was in excess of the salaries paid in the prior year. The company started the year 1920 without a surplus, after declaring a stock dividend of 20 per cent and a cash dividend of 81.93 cents. The company's earnings during the first part of 1920 were large. On March 15 the directors authorized $30,000, special compensation, to be paid to Cornelius and Siegel upon the basis of their stockholdings of 51 per cent and 49 per cent, respectively. At that time J. A. Johnson was elected a director and vice president and his salary was fixed at $500 a month from January 1, 1920. The record does not show that Johnson had been, theretofore, in the employ of the company. On April 26, 1920, the company's earnings were still on the increase and the monthly salaries of Cornelius, Siegel, and Johnson were further increased to $1,300, $900, and $1,000, respectively, effective from January 1, 1920. On May 7, 1920, the president reported a surplus of $75,000. A stock dividend of 33⅓ per cent

was declared and the three officers were voted a further bonus of $3,000 each. These facts indicate that the directors were distributing the profits of the company in the guise of compensation. The Board is not warranted, upon the evidence submitted, in allowing a deduction for compensation of officers in excess of the amount determined by the Commissioner.

> *Judgment will be entered on 15 days' notice,*
> *under Rule 50.*